UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **FREDY LANZA ET AL** | **CASE NO. 6:16-CV-01348** |
| **VERSUS** | **CHIEF JUDGE DICK** |
| **JMA PAINTERS LLC ET AL** | **MAGISTRATE JUDGE HANNA** |

### REPORT AND RECOMMENDATION

The parties reached a settlement in this case, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and as a result, have filed a Joint Motion for Approval of Settlement Agreement [Rec. Doc. 60]. Based on a review of the motion, the attached settlement agreement, the applicable law and jurisprudence, and for the following reasons, it is recommended that the Joint Motion for Approval of Settlement Agreement [Rec. Doc. 60] be granted.

### BACKGROUND

On September 26, 2016, plaintiffs Fredy Lanza and Lorenzo Romero filed a collective action complaint in the above-captioned lawsuit, asserting claims on behalf of themselves and all other similarly situated employees of JMA Painters, LLC ("JMA"), to recover allegedly unpaid overtime wages, pursuant to the FLSA,

29 U.S.C. § 207.[1] During the course of litigation, several current or former workers of JMA opted-in to this lawsuit.[2] In March 2017, this Court granted a joint motion to stay these proceedings, in order to allow the parties to engage in discussions in an effort to reach a resolution of all outstanding claims.[3] Plaintiffs did not seek certification of a collective action and, instead, pursued individual claims on behalf of the Plaintiffs identified herein.[4] The Defendants have denied all allegations against them and have raised numerous affirmative defenses.

Meanwhile, in the Eastern District of Louisiana, a separate lawsuit was filed by Osman Maldonado against New Orleans Millworks, LLC and O&G Construction, LLC (the "Maldonado Lawsuit").[5] During the course of discovery in the Maldonado Lawsuit, it was determined that many of the plaintiffs in the above-captioned lawsuit worked through O&G Construction, LLC or may also have worked for New Orleans Metalworks, Inc.[6] The parties in both lawsuits engaged in

---

[1] Rec. Doc. 1. Plaintiffs sought "to recover from Defendants unpaid wages, interest, liquidated damages, and attorneys' fees and costs[,]" in addition to "declaratory and injunctive relief." Rec. Doc. 1, p. 1, ¶ 2 (citing 29 U.S.C. § 216(b)).
[2] *See* Rec. Docs. 3, 6, 7, 15, 16, 18, 20, 21, 27, 28, 32, 33, 38, 44, 45, 46, and 47.
[3] Rec. Docs. 23 (joint motion to stay) and 26 (order granting same).
[4] *See* Rec. Doc. 54, p. 1 (Sept. 19, 2018 minutes, indicating that "[t]he parties further advised that there will be no need to certify a class for settlement purposes, as all plaintiffs have been identified herein[.]").
[5] *Osman Maldonado v. New Orleans Millworks, LLC, et al*, E.D. La. Civil Action No. 2:17-CV-01015-CJB-MBN. To avoid confusion, the undersigned notes that the EDLA action is referred to as "the Maldonado Lawsuit" in the joint motion and in this report and recommendation; however, in the Agreement, the parties refer to the same action as "the Metalworks Lawsuit." *See* Rec. Doc. 60-1, p. 1.
[6] Rec. Doc. 60, p. 2.

extensive discovery, which included the production of thousands of pages of both paper and electronic records. Additionally, numerous legal and financial issues were raised in both lawsuits.[7]

After engaging in extensive litigation, the parties began settlement discussions and negotiations for an extended period of time, which ultimately produced a resolution of both the Maldonado Lawsuit and the above-captioned lawsuit. Settlement is conditioned upon Court approval, pursuant to the currently pending joint motion. At all times, the parties have been represented by experienced legal counsel with significant experience in litigating FLSA cases. The parties have executed a Settlement Agreement and Release of Claims (the "Agreement") which effectuates resolution of both cases, a copy of which is attached to the joint motion for approval.[8] Furthermore, on November 5, 2018, United States District Judge Carl J. Barbier signed an order approving the FLSA Settlement and agreement in the Maldonado Lawsuit, and a copy of that order is likewise attached to the pending joint motion.[9]

Specifically, the Agreement covers claims for the following Opt-In Plaintiffs, who assert that they worked for JMA: Alex Mena, Lorenzo Romero, Osman Maldonado, Yessica Quintanilla, Luis Alonso Martinez, Rene Baltodano, Yasmin

---

[7] *Id*.
[8] Rec. Doc. 60-1, pp. 1-22.
[9] Rec. Doc. 60-1, pp. 23-24.

Mitland, Denis Baltodano, Luis Ramos, Nery Mejia, Sandra Pena, Jose Pineda, Pablo Acosta, Bequer Trochez, Juan Ortega, Carlos Antonio Juarez, Miguel Lozano, Olvin Lozano, Hector Ramon Lazo, Johanna Nieves, Christian Huerta, Oscar Herrera, Nerlin Sosa and Luis Abdul-Mena (collectively, "Opt-In Plaintiffs"). There are two Opt-Out Plaintiffs, who assert that they work for JMA but are opting-out of the settlement: Josue Nunez and Jose Hernandez ("Opt-Out Plaintiffs").[10] According to the Agreement, the Opt-Out Plaintiffs have thirty (30) days from the date that the Court approves the Agreement to initiate a separate legal action if they intend to pursue their claims.[11]

## LAW AND ANALYSIS

"This Court must approve any settlement reached by the parties which resolves the claims in this action brought under Section 16(b) of the FLSA."[12] Generally, settlement is the preferred means of resolving litigation.[13] Further, there is a "strong presumption" in favor of finding a settlement to be fair.[14] Before the court may approve a settlement in a collective action brought under the FLSA, it

---

[10] The undersigned notes that the Opt-Out Plaintiffs herein are also included as Opt-Out Plaintiffs in the Maldonado Lawsuit, whose claims were likewise dismissed without prejudice therein. *See* Rec. Doc. 60-1, pp. 23-24.
[11] Rec. Doc. 60, p. 3.
[12] *Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 719 (E.D. La. 2008).
[13] *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 391-92 (5th Cir. 1984).
[14] *Camp v. Progressive Corp.*, Nos. 01-2680 and 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004) (Wilkinson, MJ.) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

must first determine whether the settlement involves the resolution of a bona fide dispute over an FLSA provision and then decide whether the settlement is fair and reasonable.[15]

Pursuant to the joint motion, the parties agree that a bona fide dispute exists as to the plantiffs' FLSA claims.[16] The defendants raised issues regarding the plaintiffs' status as independent contractors, whether or not the defendants could be held liable for any plaintiffs that were employed by another entity, as well as whether or not certain plaintiffs worked for JMA.[17] Additionally, the parties disputed the number of hours worked, with the plaintiffs claiming that they regularly worked overtime hours and the defendants contending they did not. The defendants also asserted that Jason Thibodeaux cannot be held individually liable. The parties further represent that they cooperated professionally throughout this litigation and the negotiation process, while also vigorously advocating their respective positions, over the course of more than twenty-four (24) months of discovery, the exchange of documents and data and negotiations, before finally achieving a resolution. This Court, having been involved in this case since its inception, including a discovery

---

[15] *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982); *Collins*, 568 F.Supp.2d at 719.
[16] *See also* Rec. Doc. 60-1, p. 1 (In the Agreement itself, "the [p]arties agree that there are bona fide disputes between them with respect to (a) the legal entitlement to the amounts claimed in the Lawsuit; and (b) the facts that are the basis for the allegations made in the Lawsuit[.]").
[17] Rec. Doc. 60, p. 4.

dispute and several status conferences,[18] and being familiar with the attorneys on both sides as well as the protracted efforts made toward joint resolution of the issues relevant to both the above-captioned matter and the Maldonado Lawsuit, finds that a bona fide dispute exists in this case.

In determining whether a settlement is fair, adequate and reasonable, the Court should consider the following six factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.[19] As part of the fairness determination, the Court must also assess the reasonableness of any proposed award of attorney's fees and expenses sought by plaintiff's counsel.[20]

Here, settlement was reached "through a comprehensive negotiation process and the Agreement negotiated by the parties is very detailed and comprehensive."[21]

---

[18] *See* Rec. Docs. 30, 31, 34, and 36 (motion to compel; notice setting same before the undersigned; and joint motion to dismiss in light of parties' cooperation and resolution thereof); and Rec. Docs. 13, 50, 54, and 58 (status conferences).

[19] *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citing *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)); *see also Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.").

[20] *Strong v. BellSouth*, 137 F.3d 844, 849-850 (5th Cir. 1998).

[21] Rec. Doc. 60, p. 5.

The parties have agreed to a settlement sum of $138,249.55, divided as follows: (a) attorneys' fees in the amount of $51,208.87; (b) costs in the amount of $3,827.50; (c) named plaintiff Marvel Guerrero to receive $4,640.25; (d) named plaintiff Fredy Lanza to receive $8,983.80; and (e) the remaining amount, totaling $69,589.13, shall be divided among the remaining forty-one (41) Opt-In Plaintiffs, as outlined in Exhibit A, attached to the Agreement.[22] The Agreement further delineates that, of the total settlement sum, the defendants in the Maldonado Lawsuit shall be responsible for the payment of the total gross amount of $67,982.61, and JMA shall be responsible for the total gross amount of $70,266.94, with each respective defendant solely responsible for funding its portion of the total gross settlement sum.[23] The Agreement contains a comprehensive release as to all named and Opt-In Plaintiffs, which includes, *inter alia*, "any and all claims for attorneys' fees."[24] As stated by the parties, the settlement "will eliminate risk to all parties and will avoid extensive and protracted litigation that could have lasted for years."[25]

This Court has reviewed the Agreement carefully. There is no evidence of fraud or collusion behind the settlement, and there is "a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the

---

[22] Rec. Doc. 60-1, p. 2, and Rec. Doc. 60-1, pp. 11-12 (Exh. A).
[23] Rec. Doc. 60-1, p. 2.
[24] Rec. Doc. 60-1, pp. 2-3; *see also* Rec. Doc. 60-1, pp. 3-4, ¶ 4 (settlement payment procedure and individual release).
[25] Rec. Doc. 60, p. 5.

contrary."[26] Since this case was commenced in 2016, counsel for all parties have vigorously represented and advanced the position of their clients, by engaging in discovery and competently addressing any and all issues presented in the litigation. As indicated through the parties early efforts at joint resolution, the joint request for a stay to effectuate those efforts, and consistent representations of same during status conferences with the undersigned, it is clear that the settlement was reached through arms-length and good faith negotiations. Thus, the first factor favors approval of the settlement as fair, adequate and reasonable.

With regard to the inquiries set forth in the second factor, the complexity, expense, and likely duration of the litigation, this FLSA action has been ongoing since 2016 and presented several disputed legal issues which have been zealously litigated by experienced counsel. Had a settlement not been consummated, this Court is of the opinion that this case would likely have remained in litigation for a significant amount of time, in excess of at least one or two more years, including any appeal of any adverse judgment, causing the parties to have incurred significant additional expense. Accordingly, the second factor weighs in favor of finding that the settlement is fair, adequate and reasonable.

The third factor, the stage of the proceedings and the amount of discovery

---

[26] *Camp*, 2004 WL 2149079 at *7 (citing 4 Newberg on Class Actions § 11.51 (4th ed.)).

completed, likewise supports a finding that the settlement is fair, adequate and reasonable, and accordingly, should be approved. This case has been pending for over two years, since September 2016. During its pendency, the parties have conducted extensive discovery, which included the production of thousands of pages of both paper and electronic records, as well as factual, legal and financial investigations.

The fourth factor, probability of plaintiff's success on the merits, also supports a finding that the settlement is fair, adequate and reasonable. This case has been litigated by competent and experienced lawyers on each side who enjoy great respect in their field from both sides of the aisle. In light thereof, and given the nature of the disputed issues underlying the above-captioned matter and the Maldonado Lawsuit, there is uncertainty surrounding the eventual outcome of this litigation, as well as the potential for any appeal to the Fifth Circuit, such that the fourth factor weighs in favor of finding that the settlement of this action is fair, adequate and reasonable.

The fifth factor, the range of possible recovery, weighs in favor of a finding that the settlement is fair, adequate and reasonable. The parties have carefully negotiated and outlined the recovery of the two named plaintiffs, Guerrero and Lanza, as well as the payments due to each of the remaining Opt-In Plaintiffs, such that each plaintiff will receive a fair, reasonable, and adequate sum in resolution of their FLSA claims against the defendants. Further, the Agreement explicitly notes that "Defendants have and continue to experience dire financial situations that impact

their ability to fund a settlement to resolve this dispute."[27] As such, this Court finds that the Agreement represents a settlement which curtails risk, while resolving this dispute for an amount which, both in total and on individual assessment, is adequate, fair and reasonable and within range anticipated by the Court.

The final factor, the opinions of the class counsel, class representatives, and absent class members, also mandates a finding that the settlement is fair, adequate and reasonable. As indicated in the Joint Motion for Approval of Settlement Agreement, all Opt-In Plaintiffs "deem this settlement to be [] fair and reasonable after being fully informed of all terms and after execution of the Agreement."[28] All parties approve the terms of the Agreement, there have been no objections to the settlement, and all agree that the proposed settlement is in the best interests of the parties involved. As recognized herein, the settlement was arrived at after extensive negotiation by experienced counsel. "The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement."[29] Here, this Court finds no evidence that counsel has not worked in good faith to secure a good and fair settlement.

As part of the fairness determination, the Court must also assess the reasonableness of any proposed award of attorney's fees and expenses sought by

---

[27] Rec. Doc. 60-1, p. 1.
[28] Rec. Doc. 60, p. 5.
[29] *Collins*, 568 F.Supp.2d at 727 (citing *Cotton*, 559 F.2d at 1330).

plaintiff's counsel.[30] Here, of the total settlement sum of $138,249.55, attorneys' fees represent $51,208.87, while costs represent $3,827.50.[31] For the reasons that follow, Court approval for payment by the defendants of these amounts to the plaintiffs' counsel should be granted.

The Fifth Circuit generally uses the lodestar method for determining reasonable attorney's fees in class actions and FLSA actions.[32] A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work.[33] After making this calculation, the district court may decrease or enhance the lodestar based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5 Cir. 1974).[34] The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account. Such reconsideration is impermissible double-counting.[35] Further, "[t]he lodestar . . . is presumptively reasonable and should be

---

[30] *Strong*, 137 F.3d at 849-850.
[31] Rec. Doc. 60-1, p. 2.
[32] *Strong*, 137 F.3d at 850.
[33] *Id*.
[34] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Johnson*, 488 F.2d at 717-19.
[35] *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).

modified only in exceptional cases."[36]

In this case, all parties have agreed that plaintiffs' counsel are entitled to attorneys' fees in the amount of $51,208.87, or roughly 37%, and costs in the amount of $3,827.50. The parties have not submitted documentation as to the total hours of attorney work performed by plaintiffs' counsel, counsels' customary rate of pay, or the expenses incurred by the plaintiffs in this litigation. Nevertheless, given that contingency fee arrangements in this legal community are generally in excess of 33%, (in fact, they are oftentimes 40%) and attorney's fees and expenses are usually deducted from each plaintiff's total recovery, the Court finds the proposed award in this case, is fair and reasonable. As previously noted, a significant amount of time and effort has been expended since this case was filed in September 2016. Accordingly, this Court finds that the proposed award in this case is fair and reasonable.

## **CONCLUSION**

For the reasons stated above, IT IS RECOMMENDED that the proposed settlement be approved, and accordingly, that the Court grant the Joint Motion for Approval of Settlement Agreement [Rec. Doc. 60], on the terms and conditions set forth in the attached Settlement Agreement and Release of Claims [Rec. Doc. 60-1].

---

[36] *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

IT IS FURTHER RECOMMENDED that the claims by the following Plaintiffs and/or Opt-In Plaintiffs against JMA Painters, LLC and Jason Thibodeaux be DISMISSED WITH PREJUDICE: Alex Mena, Lorenzo Romero, Osman Maldonado, Yessica Quintanilla, Luis Alonso Martinez, Rene Baltodano, Yasmin Mitland, Denis Baltodano, Luis Ramos, Nery Mejia, Sandra Pena, Jose Pineda, Pablo Acosta, Bequer Trochez, Juan Ortega, Carlos Antonio Juarez, Miguel Lozano, Olvin Lozano, Hector Ramon Lazo, Johanna Nieves, Christian Huerta, Oscar Herrera, Nerlin Sosa and Luis Abdul-Mena.

IT IS FURTHER RECOMMENDED that the claims by the following Opt-Out Plaintiffs be DISMISSED WITHOUT PREJUDICE against JMA Painters, LLC and Jason Thibodeaux: Josue Nunez and Jose Hernandez. Opt-out Plaintiffs shall have thirty days from the date of this Order to file new lawsuits, if they so desire. If they file new lawsuits within thirty (30) days of the date of this Order, there will be no effect on the statute of limitations on their claims in accordance with the terms of the Settlement Agreement and Release of Claims [*See* Rec. Doc. 60-1].

IT IS FURTHER RECOMMENDED that the case be closed, subject to the Court retaining jurisdiction for ninety (90) days to enforce the terms of the Settlement Agreement and Release of Claims, if necessary.

Because the parties have agreed on the payment of the settlement funds and attorneys' fees and there have been no objections to the settlement filed in the record,

the Court hereby shortens the time period for objections set forth in 28 U.S.C.A. § 636(b)(1)(c). The parties have five (5) days to serve and file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within five (5) days following the date of its service, shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.[37]

Signed at Lafayette, Louisiana on this 8th day of November, 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[37] *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).